UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDI VAN EMON,

                    Plaintiff,

                                                    Case No. 05-CV-72638

vs.

                                                    HON. GEORGE CARAM STEEH

STATE FARM MUTUAL AUTOMOBILE
INSURANCE, COMPANY,

                    Defendant.

_____/

ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

         This lawsuit arises out of an automobile accident which rendered plaintiff Brandi

Van Emon a paraplegic.  She brought this suit against State Farm Mutual Automobile

Insurance, Company (State Farm) for breach of contract seeking personal protection

insurance (PIP) benefits under Michigan's No-Fault Act, MCL § 500.3142, and tort

claims of silent fraud, fraud/misrepresentation, negligence, intentional infliction of

emotional distress, and violations of the Michigan Consumer Protection Act (MCPA),

MCL § 445.901 et seq.  Now before the court is defendant State Farm Mutual

Automobile Insurance Company (State Farm's) motion for summary judgment on the

tort claims only.  Oral argument was heard on June 12, 2008.  For the reasons stated

on the record and below, defendant's motion for partial summary judgment shall be

granted.

STATEMENT OF FACTS

         On January 1, 1989, Van Emon was driving home from a bowling alley in the

backseat of a car, without wearing a seat belt, when the vehicle struck a tree and she was ejected from the car. At the time of the accident, Van Emon was 16-years old. After the accident, Van Emon remained comatose for about three weeks. She suffered catastrophic injuries including a closed head injury and spinal cord injuries which have rendered her a paraplegic and leave her wheelchair bound. State Farm has paid personal protection (PIP) benefits totaling over two million dollars ($2,000,000) since the accident. The PIP benefits paid to date include expenditures for home modification and attendant care. The amount of attendant care paid has varied over the years. Sometimes, State Farm paid for as much as 24-hour care when Van Emon underwent various surgeries or suffered complications in her condition.

Van Emon filed a Second Amended Complaint on June 13, 2006 which alleges six counts. Count I alleges silent fraud; Count II alleges fraud/misrepresentation; Count III alleges breach of contract; Count IV alleges negligence; Count V alleges intentional infliction of emotional distress; and, Count VI alleges violations of the MCPA, for State Farm's alleged failure to explain available benefits.

On August 17, 2006, State Farm filed a motion for summary judgment which this Court construed as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. On January 26, 2007, this Court issued an order (Document #100) granting in part and denying in part State Farm's Rule 12(b)(6) motion. In that order, the Court granted the motion to dismiss in part and held that Van Emon's claims of silent fraud (Count I) and fraud/misrepresentation (Count II) were dismissed, in part, to the extent that they were based on an alleged duty under the Uniform Trade Practices Act (UTPA), MCL § 500.2001 et seq., or were based on the relationship between the parties as insured-

2

insurer.

The Court left open, however, the possibility that Van Emon could prove a fraud claim by showing that State Farm voluntarily assumed a duty to explain available insurance benefits to Van Emon. Specifically, the Court relied on a document submitted by Van Emon entitled, "Our Commitment to Our Policy Holders." Within that document, State Farm stated, in relevant part:

> It is the responsibility of the State Farm claim staff to implement Company philosophy with respect to claim handling. Our commitment to our policy holders is to treat them like a good neighbor. We should:
> · · ·
>
> Explain all relevant coverages under the policy. Encourage policyholders to report all losses and avail themselves of all benefits under their coverages.
> ...
>
> Communicate with and be responsive to inquiries from insureds and their attorneys by promptly answering letters and phone calls.

(Second Amended Complaint, Exhibit A). In its January 26, 2007 order, this Court noted that plaintiff met the requirements necessary to prove a fraud claim under Federal Rule of Civil Procedure 9(b) with the exception of identifying the time, place and receipt of the "Our Commitment to Our Policy Holders" document and granted leave to plaintiff to file a Third Amended Complaint no later than February 16, 2007, which plaintiff has not done.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968);

see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

ANALYSIS

I.     Silent Fraud and Fraud/Misrepresentation

In this Court's January 26, 2007 order, the Court conditioned allowing Count I (silent fraud) and Count II (fraud/misrepresentation) to survive State Farm's Rule 12(b)(6) motion to dismiss on the condition that plaintiff amend her Complaint to include with specificity the "time, place, and receipt of the 'Our Commitment to Our Policy Holders' document." That document appeared to be the sole basis for attributing to State Farm an affirmative duty to explain all coverages under the policy. As the Court explained in its January 26, 2007 opinion, in order to prove a claim of silent fraud, plaintiff must show that there was a purposeful suppression of information by a party with a legal, or equitable, duty to disclose the information under the circumstances. Hord v. Environmental Research Institute of Michigan, 463 Mich. 399, 412 (2000). This Court explained that such a duty does not arise under the Uniform Trade Practices Act (UTPA), Mich. Comp. Laws Ann. § 500.2001 et seq., nor does it arise based on the insurer-insured relationship.

The first step of proving a silent fraud claim is the plaintiff must show that the alleged silence "occurred under circumstances where there was a legal duty of disclosure." M&D Inc. v. W.B. McConkey, 231 Mich. App. 22, 29 (1998) (citing United

5

States Fid & Guar. Co. v. Black, 412 Mich. 99, 125 (1981)), app. denied, 459 Mich. 962 (1999).  Mere nondisclosure is not enough to state a claim for silent fraud; the plaintiff must show that the party suppresses part of the truth when asked.  Id.  Judge Edmunds considered almost this exact same question in Buntea v. State Farm, 467 F. Supp. 2d 740 (E.D. Mich. 2006).  In Buntea, Judge Edmunds dismissed the silent fraud claim for plaintiff's failure to state a claim.  She explained that the insurer does not have a duty to disclose coverage where the insured does not question the benefits offered.  Id. at 746. Judge Edmunds considered whether the document titled "Our Commitment to Our Policyholders" gave rise to a duty to disclose coverage.  She ruled that the document, "might lead to a contractual duty to disclose coverage under the policy, but such a duty would then fall under Plaintiff's breach of contract claim, and not her claim for silent fraud."  Id. at 746-47 (emphasis in original).

Plaintiff has not filed a Third Amended Complaint nor has she shown that she ever received a copy of "Our Commitment to our Policy Holders."  Having failed to show that State Farm had a duty to disclose all available coverage and that State Farm communicated such an alleged duty to the plaintiff, State Farm argues that Van Emon's silent fraud claim must be dismissed.  Van Emon, however, directs the court to its opinion and order dated May 31, 2007, whereby the court noted that Van Emon had failed to amend her complaint, and thus dismissed, without prejudice, Van Emon's fraud claims to the extent that they were based on the "Our Commitment to Policy Holders" document.  In that May 31, 2007 order, however, this court noted that the "failure of plaintiff to file an amended complaint does not affect her remaining silent fraud claims, or her claims of fraudulent misrepresentation and negligence."  Relying on the court's

6

language quoted above, Van Emon argues that the court did not limit her fraud claims to her reliance on the "Our Commitment to Policy Holders" document.  Based on the court's May 31, 2007 order (Document #146), it appears that plaintiff is correct.

Silent fraud may be proven by showing "the failure to divulge a fact or facts the defendant had a duty to disclose."  Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, 107 Mich. App. 509, 517 (1981).  In order to state a claim for silent fraud, the defendant must first have an affirmative duty to disclose Van Emon's no-fault benefits.  In its January 26, 2007 order, this Court noted that the only place that affirmative duty arose was in a document entitled "Our Commitment to Our Policy Holders."  In its May 31, 2007 order, however, the court denied defendant's motion to dismiss the fraud claims, despite her failure to show that she ever received that document, leaving open the possibility that Van Emon could prove reliance in some other way.  What is important to note about the court's May 31, 2007 order, is that the court was deciding a motion to dismiss, not a motion for summary judgment.  Under that standard, the court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief."  General Motors Eng'r and Assoc., Inc. v. West Bloomfield Tp., 922 F.2d 328, 330 (6th Cir. 1990). The court was very liberal in allowing Van Emon to go forward with her fraud claims so that discovery could proceed and Van Emon would be allowed to develop her theory of the case.

The tort of fraudulent misrepresentation requires that six elements be proven: (1) the defendant made a material representation, (2) the representation was false, (3) when the defendant made the representation, it knew that it was false, or the defendant

made the representation recklessly, without any knowledge of its truth, and as a positive assertion, (4) the defendant made the representation with the intention that it should be acted on by the plaintiff, (5) the plaintiff acted in reliance on the representation, and (6) the plaintiff suffered injury due to his reliance on the representation. Hord, 463 Mich. at 404; Hi-Way Motor Co. v. International Harvester Co., 398 Mich. 330, 336 (1976).

Having carefully reviewed its prior orders, this court is not convinced that plaintiff's failure to show that she received a copy of the "Our Commitment to Policy Holders" document, is dispositive of defendant's motion for summary judgment. In denying State Farm's prior motion to dismiss, this court left open the possibility that Van Emon could prove, in some other way, her reliance on State Farm's alleged duty to truthfully explain no-fault benefits under her policy. State Farm now argues that not only has plaintiff failed to show that she received the "Our Commitment to Policy Holders" document, which plaintiff does not dispute, but she has wholly failed to show any other way that State Farm undertook a duty to explain all of her benefits. In considering this argument, the court is mindful that it is now deciding a motion for summary judgment, so Van Emon may no longer rest on the bald assertions of her pleadings, but must come forward with evidence to support her claims.

In response to State Farm's claim that there is no proof that it voluntarily undertook a duty to explain benefits, Van Emon, by way of a footnote, directs the court to four pieces of evidence. First, she cites to the deposition testimony of Tom Collins, State Farm's designated representative, wherein he states that State Farm has a duty to explain benefits based on the "Our Commitment to Our Policyholders" document. (Document #218, Exhibit A at 18-19). She also relies on the deposition testimony of

Sue Laws who admitted that part of her job responsibilities are to explain benefits. (Document #218, Exhibit B at 29). Plaintiff quotes Laws as admitting that she could not give examples of what benefits she explained to Plaintiff unless "it's written in the log." (Document #218, Exhibit B at 30). Finally, she relies on Law's statement that, "I do not find a specific remark where I indicate I explained medical benefits specifically at one point in the claim." (Document #218, Exhibit B at 34).

The evidence relied on by Van Emon goes only to prove that State Farm had an internal policy of explaining coverage, but does not show that State Farm communicated this alleged duty to Van Emon herself. Moreover, Van Emon has failed to come forward with any evidence to suggest that she was defrauded in any way. She has not shown that she asked State Farm to explain benefits and that State Farm misled her as to the extent of her coverage. The court can only guess that Van Emon seeks to rely on the allegations contained in her Complaint, but that is not a sufficient basis for defeating summary judgment. Van Emon must come forward with facts to support her fraud claims and she has failed to do so. Accordingly, State Farm is entitled to summary judgment as to Van Emon's silent fraud and fraud/misrepresentation claims.

II.    Negligence

In this court's January 26, 2007 order denying defendant's Rule 12(b)(6) motion to dismiss, plaintiff's negligence claim survived dismissal. This court explained that plaintiff's allegation that State Farm had undertaken a duty to explain all available no-fault benefits gave rise to a viable negligence claim. State Farm now argues that it is entitled to summary judgment as to plaintiff's negligence claim because plaintiff has

failed to show that it undertook such a duty.  The only manner of proving the existence

of such a duty recognized in the court's January 26, 2007 opinion, was the showing that

Van Emon had received and relied upon the document entitled, "Our Commitment to

Our Policy Holders."  The court granted Van Emon time to amend her Complaint to

allege the time, place, and receipt of that document and Van Emon failed to do so.

State Farm then filed a renewed motion to dismiss based on Van Emon's failure to

amend to show reliance on that document.  In the court's May 31, 2007 order, the court

denied State Farm's motion to dismiss, and allowed plaintiff to proceed with her

negligence claim even though she failed to amend her Complaint to show that she had

received and relied upon the document, "Our Commitment to Our Policy Holders."

  State Farm now argues that it is entitled to summary judgment as to Van Emon's

negligence count because Van Emon failed to specify the time, place, and receipt of the

"Our Commitment to Our Policy Holders" document by filing a Third Amended

Complaint.  Van Emon, on the other hand, argues that it already survived State Farm's

motion to dismiss on the same grounds, and, thus, must survive summary judgment

here.  The standard for overcoming a motion for summary judgment is markedly more

difficult than surviving a motion to dismiss.  Van Emon cannot rely on the fact that her

negligence claim survived State Farm's motion to dismiss to beat its motion for

summary judgment.  She must come forward with evidence in support of her claim that

is sufficient to create a genuine issue of material fact.  To establish a prima facie case of

negligence, she must prove: (1) defendant owed plaintiff a duty, (2) defendant breached

that duty, (3) causation, and (4) damages.  Case v. Consumers Power Co., 463 Mich. 1,

6 (2000).  Plaintiff has not met the threshold showing that State Farm owed her a duty.

Accordingly, State Farm is entitled to summary judgment as to plaintiff's negligence claim.

Because the court finds that State Farm is entitled to summary judgment as to Van Emon's claims of silent fraud, fraudulent misrepresentation, and negligence, the court does not reach the question of whether those claims are barred, in part, by the statute of limitations. However, the court addresses that argument with respect to Van Emon's intentional infliction of emotional distress claim below and that same analysis would apply with respect to her fraud and negligence claims.

III.   <u>Intentional Infliction of Emotional Distress</u>

State Farm moves to dismiss Van Emon's intentional infliction of emotional distress claim on the grounds that Van Emon has failed to come forward with the exact dates of the alleged misconduct and no specific documentation to support her claim. In order to prevail on a claim of intentional infliction of emotional distress, plaintiff must prove: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. <u>Hayley v. Allstate Ins. Co.</u>, 262 Mich. App. 571, 577 (2004), <u>app. denied</u>, 472 Mich. 923 (2005).

In response to State Farm's interrogatory requesting that Van Emon state with specificity all acts of State Farm which give rise to her intentional infliction of emotion distress claim, Van Emon states that State Farm, while on notice of her suicidal tendencies and psychological issues, blamed her and threatened to take away her benefits. In her Second Amended Complaint and in response to State Farm's interrogatory, Van Emon alleges that State Farm told her they might place her in a nursing home. Van Emon further alleges that State Farm only agreed to pay for health

club dues and exercise classes if she would lose five pounds a month. State Farm faults Van Emon for failing to state the exact dates that the alleged misconduct occurred. State Farm argues that Van Emon has not supported the allegations of her interrogatory response with any evidence, but merely refers State Farm to its own claims files. State Farm asserts that the depositions of Van Emon, and her mother, Dee Dray, are too ambiguous to support the intentional infliction of emotional distress claim. According to State Farm, Dray testified that State Farm made her feel threatened and intimidated and made her daughter, Van Emon, feel hopeless and helpless.[1] State Farm alleges that these emotions, without more, are insufficient to support an intentional infliction of emotional distress claim.

In response to State Farm's motion for summary judgment, Van Emon has come forward with documentation to support her claim. Most of the documented events occurred in the 1990s. In fact, all but two of the acts occurred prior to July 1, 2002. State Farm argues that if plaintiff is allowed to go forward with her intentional infliction of emotional distress claim, it is entitled to partial summary judgment as to all claims accruing prior to July 1, 2002. The lawsuit was filed on July 1, 2005 and the statute of limitations period for an intentional infliction of emotional distress claim is three years. MCL 600.5805(10), Lemmerman v. Fealk, 449 Mich. 56, 63-64 (1995); Dennis v. Robbins Funeral Home, 428 Mich. 698, 706 (1987). Since the majority of the alleged conduct giving rise to the intentional infliction of emotional distress claim occurred

---

[1]State Farm has cited to Dee Dray's deposition but has not attached it as an exhibit. Van Emon has attached portions of her testimony, but not those referenced by State Farm. (Doc. #218, Exhibit H).

outside the limitations period, the court first considers State Farm's argument that it is entitled to partial summary judgment based on the statute of limitations.

Van Emon argues that the three-year statute of limitations period is tolled by MCL § 600.5851 because the accident rendered her "insane" as that term is used in the statute. Section 600.5851 provides:

> (1) Except as otherwise provided in subsections (7) and (8), if the person first entitled to make an entry or bring an action under this act is under 18 years of age or insane at the time the claim accrues, the person or those claiming under the person shall have 1 year after the disability is removed through death or otherwise, to make the entry or bring the action although the period of limitations has run. This section does not lessen the time provided for in section 5852.
>
> (2) The term insane as employed in this chapter means a **condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know** and is not dependent on whether or not the person has been judicially declared to be insane.

Id. (emphasis added). "Whether a person is insane for purposes of [the tolling statute] is a jury question unless it is incontrovertibly established either that the plaintiff did not suffer from insanity at the time the claim accrued or that she had recovered from any such disability more than one year before she commenced the action." Meiers-Post v. Schafer, 170 Mich. App. 174, 179 (1988).

Defendant claims that plaintiff has come forward with no medical evidence to suggest that she is "insane" as that word is used in the statute. Van Emon, on the other hand, claims that she has met the definition of insane from the time of the accident to the present. First, she relies on the fact that in 1993, she has had a guardianship. (Document #218, Exhibit C). She relies on the daily progress reports of Jeffrey Kaylor,

a psychologist, from 1992 and 1993 which state that Van Emon is devoid of insight, with self-destructive behavior, and an out of control lifestyle. (Document #218, Exhibits D and E). She also relies on the 1991 report of Jack N. Carr, M.D., who noted that plaintiff did not know the date of her involuntary admission or the date that her mother's conservatorship over her funds would end. (Document #218, Exhibit F). She also relies on the 1993 report of Dr. Owen Perlman, a psychiatrist, who reported that Van Emon "lacked the capacity to care for herself, her property or her finances and again it was noted that a Guardian might be beneficial." (Document #218, Exhibit G). On June 26, 2006, Dr. Blase reported that Van Emon has cognitive and memory deficiencies and difficulty handling complex information. (Document #218, Exhibit H). Alan G. Lewandowski, Ph.D., evaluated Van Emon on November 30, 2007, and reported that Van Emon will always need psychological care. (Document #218, Exhibit I). Charles Jan, social worker, examined Van Emon on May 1, 2007, and reported that Van Emon needs assistance with her judgment. (Document #218, Exhibit J).

Given the above medical evidence submitted by Van Emon, she has at least raised a genuine issue of material fact that she is "insane" as defined by the tolling statute. In other words, she has raised a question as to whether she was "mentally deranged" such that she did not understand her rights. Makarow v. Volkswagen of America, 157 Mich. App. 401, 407-09 (1987) (although plaintiff retained counsel, his psychological and physical disabilities prevented him from communicating with his lawyers and supported tolling); Meiers-Post, 170 Mich. App. at 177-80 (doctor's affidavit and letters of doctor and social worker that plaintiff repressed memory of sexual assault

14

for ten years supports tolling).

State Farm argues that if Van Emon is "insane" under the tolling statute, then she lacks the capacity to sue. In support of this argument, State Farm relies on a recent decision of Judge Gadola. Bradley v. Macomb County, 370 F. Supp. 2d 607 (E.D. Mich. 2005). In Bradley, Judge Gadola held that the statute of limitations period was not tolled where the plaintiff could not on the one hand, argue that she was insane, and on the other hand, bring a lawsuit on her own behalf while under the same infirmity. Judge Gadola explained:

> Plaintiff has offered no date on which the alleged condition of insanity has been removed. If Plaintiff remains insane, then he would lack the capacity to sue. Fed. R. Civ. P. 17(b); Mich. Ct. R. 2.201 (B), (E). Plaintiff, however, brings this present action in his own capacity, without a representative. Thus, plaintiff must have been competent on or before May 17, 2004, when this action was filed.

Id. at 611.

Plaintiff responds that the lack of capacity to sue is a defense that must be pled with specificity or it is waived. Fed. R. Civ. P. 9(a)(2). Defendants have not timely raised that defense in their pleadings. Moreover, plaintiffs argue that "incompetence," as used in the court rules, is a different animal altogether from the "insane" standard as it is used in the tolling statute. The definition of "incompetence" refers to those persons who have been judicially declared to be incompetent. Plaintiff also distinguishes this case from Bradley in that the plaintiff in that case was able to understand his rights and could take care of himself. Plaintiff maintains that the issue of whether an individual is "insane" within the meaning of the tolling statute is a question of fact. In support of this

15

argument, plaintiff relies on a litany of cases. <u>Davidson v. Baker-Vander Veen Constr. Co.</u>, 35 Mich. App. 293, 301 (1971) (fact that plaintiff worked and retained counsel did not preclude finding that plaintiff was "mentally deranged" within meaning of the tolling statute as "[o]ne need not be a blithering idiot in order to raise the defense of mental derangement;)" <u>Hill v. Clark Equip. Co.</u>, 42 Mich. App. 405, 408 (1972) ("whether a plaintiff is insane for the purposes of tolling a statute of limitation is a question ordinarily to be decided by the trier of fact;") <u>Hogan v. Allstate Ins. Co.</u>, 124 Mich. App. 465, 467-68 (1983) (where reasonable minds could differ as to whether plaintiff suffered from a mental infirmity which would prevent her from comprehending her rights, the issue is for the jury.)

In support of her argument that she was "insane" as that term is defined in the tolling statute, she relies on the reports of treating doctors from the early nineties, shortly after the accident, as well as on recent reports. Specifically, she has submitted the recent expert report of Owen Z. Perlman dated February 6, 2007 (Document #218, Exhibit G) in which he noted that "[t]he salient features are the patient's age at onset of accident, complete spinal cord injury at T9, neurogenic bowel and bladder, frontal lobe syndrome with impulsivity, poor judgment and denial, as well as organic mood disorder and post-traumatic stress disorder." It is unclear from his report the extent to which she continues to suffer from any mental infirmity. Van Emon also relies on the 2007 report of Alan Lewandowski, who identifies himself as holding a Ph.D. in neuropsychology and clinical psychology (Document #218, Exhibit I), in which he noted that she "will always need psychological treatment." He also noted, however, that he did not have an opinion

as to her needs for supervision and decision making, but on the date of his evaluation, "she seems completely appropriate and able to interact with me independent of others." She also relies on the June 26, 2006 report of psychologist John Blase, who found that she continues to experience "mild cognitive difficulties and the residual effects of her significant traumatic brain injury." (Document #218, Exhibit H). On May 1, 2007, social worker Charles Jan evaluated Van Emon and agreed with Dr. Perlman's conclusions and found that plaintiff requires 24-hour supervision. (Document #218, Exhibit J). Given the plethora of evidence plaintiff has submitted in support of her argument that she suffered from a "mental derangement" that prevented her from knowing her rights, it appears that a question of fact remains for the jury as to whether or not she suffered from an infirmity rendering her "insane" within the meaning of the tolling statute.

State Farm argues that in order for plaintiff to allege that she was an incompetent person at the time she filed the lawsuit, and for some time prior thereto, she must dismiss this lawsuit without prejudice, and then bring a new lawsuit pursuant to Fed. R. Civ. P. 17(c)(2), in which the court will appoint her a next friend or guardian ad litem. Van Emon has not alleged, however, that she is incompetent to bring this lawsuit but only that she was "mentally deranged" as that term is defined in the tolling statute. MCL § 600.5851. It is for the jury to decide if Van Emon was "insane" within the meaning of the tolling statute.

Having found that a question of fact remains as to whether the statute of limitations period is tolled, the court considers all of Van Emon's claims of intentional infliction of emotional distress, even those outside the three-year statute of limitations

period.  In response to State Farm's motion for summary judgment as to the intentional infliction of emotional distress claim, plaintiff alleges eleven instances of misconduct on the part of State Farm.  These allegations are summarized below:

1.    In April, 1992, State Farm denied her reimbursement for batteries for a cordless telephone, batteries for a tape recorder for use at school, and for lotion she needed after each catheterization.

2.    In August, 1992, State Farm denied her a cell phone.

3.    In March, 1993, State Farm's claim representative told Van Emon that she was uncooperative and suspended her benefits until she attended a meeting with her claim representative and case manager.

4.    In December, 1993, State Farm reduced Van Emon's treatment with Dr. Kaylor despite her two suicide attempts.

5.    In February, 1994, State Farm warned Van Emon that it would stop paying benefits unless she maintained her own health and ulcers.

6.    In April, 1994, State Farm warned Van Emon that it would not pay medical expenses for her decubitus ulcers if they were caused by her non-compliance with her treatment program.

7.    In April, 1994, State Farm told plaintiff that her skin care problems were caused by her failure to provide self care and State Farm would not be responsible for such care in the future.

8.    On August 8, 1994, State Farm notifies Van Emon that she must mitigate

her damages by abiding by an appropriate health plan, else State Farm will not be responsible for medical treatment arising from her irresponsibility.

9.      In October, 1997, State Farm tells Van Emon that it will only pay for her health club membership if she loses five pounds per month.

10.     In August, 2000, State Farm tells Van Emon that it will not pay for her friends to be her care providers.

11.     On July 26, 2004, State Farm tells Van Emon that she must move into her new house in two weeks although it is not yet finished.

Boiled down to its bare essentials, the crux of Van Emon's intentional infliction of emotional distress claim is the theory that State Farm said it might cut off benefits if she failed to participate in her own self-care, which she alleges that she could not do as a result of her psychological impairments.  The question for the court, then, becomes is it enough, to state a claim for intentional infliction of emotional distress, that State Farm threatened to take away benefits if Van Emon failed to participate in her own self-care.

In this court's prior order denying State Farm's motion to dismiss and allowing the intentional infliction of emotional distress claim to proceed, the court pinned its decision on allegations that State Farm told Van Emon that it might put her in a nursing home.  This court explained, "[w]ithout factual development in this case, it is impossible for the court to determine that a reasonable person would not consider the alleged statements of defendant's representatives concerning institutional to an allegedly emotionally disabled person 'extreme and outrageous' behavior."  (Document #100 at p.

10).  The only evidence Van Emon has submitted to support this claim is the deposition testimony of her mother who testified at her deposition that prior to 1994, someone at State Farm made the comment, "we're going to put [Van Emon] in a nursing home." (Document #218, Exhibit P at 5).  Despite having now had significant time to develop the record, Van Emon has failed to show when the alleged comment about possible placement in a nursing home was made, who made the comment, how it was communicated to her, or any other information about the context in which it was made which might give rise to an intentional infliction of emotional distress claim.  She has not even shown that the comment was made to her directly, or if it was, whether she was mentally competent to understand it.  The mere comment that placement in a nursing facility might be appropriate care is simply not enough to give rise to an intentional infliction of emotional distress claim.

In order to prove a claim of intentional infliction of emotional distress, she must show extreme and outrageous conduct on the part of State Farm and the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Hayley, 262 Mich. App. at 577.  Van Emon has failed to come forward with sufficient proofs to raise a genuine issue of material fact as to her intentional infliction of emotional distress claim.  She points to State Farm's failure to reimburse her for batteries or skin care lotion.  Clearly, this is not atrocious and utterly intolerable conduct.  Moreover, her Complaints that State Farm that threatened to cut off coverage if she did not participate in her own self-care cannot be characterized as going "beyond all

possible bounds of decency."  State Farm's requirement that she lose five pounds a month in order for it to reimburse her for the costs of a health club membership, while potentially embarrassing or insulting, does rise to the level of the kind of "extreme and outrageous conduct" required to give rise to an intentional infliction of emotional distress claim.

In <u>Harris v. Citizens Ins. Co.</u>, 141 Mich. App. 110 (1983), the Michigan Court of Appeals considered the question of whether a viable intentional infliction of emotional distress claim existed in the context of a no-fault insurance dispute.  In <u>Harris</u>, the Court of Appeals explained, "[g]enerally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" <u>Id.</u> at 114.  In <u>Harris</u>, a senior claims representative instructed a subordinate to telephone the insured to try to catch him in a lie about whether or not he was back to work and suggested that the examiner tape record the conversation.  <u>Id.</u>  The claims representative also attempted to discontinue the rehabilitation of the injured plaintiff.  <u>Id.</u>  The Court of Appeals found that the "suggestions allegedly made by the claims examiner, while unprofessional, insulting and reflective of a cynical and insensitive attitude, cannot be characterized as conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  <u>Id.</u> (quotations omitted).

This court very generously allowed Van Emon the chance to develop her intentional infliction of emotional distress claim throughout the discovery period, but she

has failed to come forward with sufficient proofs to survive State Farm's motion for summary judgment. At oral argument, State Farm pointed out that most of the communications regarding Van Emon's coverage were directed to her mother and not to Van Emon herself. Under this scenario, State Farm argues that the statements could not have been emotionally upsetting to Van Emon who was not privy to the allegedly inflammatory communications. Even if she was privy to alleged statements by State Farm threatening to cut off coverage if she failed to participate in her own self care or that she might be placed in a nursing home, it is unclear if Van Emon had the mental capacity to understand those statements enough to be upset by them at all. According to plaintiff's response brief and attached exhibits, Van Emon has significant cognitive and memory deficiencies and is unable to understand her rights. (Doc. #218 at 6). State Farm claims that Van Emon's mother testified that State Farm made her feel threatened and intimidated and that plaintiff felt helpless and hopeless. It is unclear if plaintiff's emotions can be tied to alleged misconduct on the part of State Farm or if those feelings of hopelessness were more directly connected to her response to her catastrophic injuries, which included being rendered a paraplegic.

Van Emon relies on the deposition testimony of her mother, Dee Dray, that a 1994 letter drafted by State Farm representative Sue Laws was viewed as a threat "because of comments that State Farm had made prior to, we're going to put you in a nursing home." (Document #218, Exhibit P at 5). Given the severity of Van Emon's injuries, including the fact that she was in a coma for three weeks after the accident and suffered a serious closed head injury rendering her a paraplegic, there are many

contexts that one could imagine in which the suggestion that care of Van Emon occur in a "nursing home" might have been seen as an appropriate placement and need not be viewed as a threat, but as a viable consideration. Even if the statement could be viewed as a threat of some sort, as Van Emon alleges, it simply is not the kind of comment that would elicit an average person to throw up her hands in outrage the way that, for example, use of a racial epithet might. Compare Ledsinger v. Burmeister, 114 Mich. App. 12 (1982) (intentional infliction of emotional distress claim viable where complaint alleges that merchant shouted racial slurs while evicting plaintiff from a public place of business). Having failed to show extreme and outrageous conduct, Van Emon's intentional infliction of emotional distress claim shall be dismissed with prejudice.

V.    Michigan Consumer Protection Act

Finally, the Court considers State Farm's motion for summary judgment as to the MCPA claim. State Farm argues that the MCPA does not apply to disputes over first-party no-fault benefits which do not arise out of the circumstances surrounding the sale or marketing of the policy.[2]

In Count VI of the Second Amended Complaint, Van Emon alleges that State Farm has violated it duty to act honestly and to explain benefits under

_____

[2]State Farm reserves its argument that the MCPA claim is barred by the one-year back rule of the No-Fault statute pursuant to Grant v. AAA Michigan/Wisconsin, Inc., 272 Mich. App. 142 (2005). This Court previously considered and rejected this argument in its opinion and order granting in part and denying in part defendant's renewed "motion for summary judgment." (Document #100).

MCL § 500.2006(3) which requires that "[a]n insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days." Van Emon further alleges that State Farm violated its obligations under MCL § 500.2026 by breaching its duty not to misrepresent facts or coverages, its duty to communicate promptly, its duty to affirm or deny coverage timely, its duty not to compel insureds to institute litigation by underpaying, its duty to identify payments and coverage, and its duty to explain the basis for denial or offer of compromise. Van Emon alleges that State Farm violated Chapter 20 of the Insurance Code, including UTPA. Specifically, Van Emon alleges that State Farm violated Chapter 20 of the Insurance Code as set forth in the MCPA, MCL § 445.903(a), (c), (e), (s), (x), (bb), and (cc).

State Farm argues that the MCPA limits its reach to disputes over first-party insurance benefits that are related to misconduct in the advertising, marketing or sale of the policy. State Farm alleges that the MCPA applies only to the sales transaction. In support of this claim, State Farm cites to the MCPA definition of "trade or commerce." The MCPA defines "trade or commerce" in relevant part:

> "Trade or commerce" means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity.

MCPA § 445.902(g). State Farm cites to Noggles v. Battle Creek Wrecking, Inc., 153 Mich. App. 363, 367 (1986) where the Court of Appeals explained, "[w]e are satisfied that a clear legislative intent in enacting the Michigan Consumer Protection Act was to

protect consumers in their purchases of goods which are primarily used for personal, family or household purposes."  In support of its argument that the MCPA is limited in scope to the presentation of a product and the inducement to buy it, State Farm relies on <u>Zine v. Chrysler Corp.</u>, 236 Mich. App. 261 (1999).

<u>Zine</u> does not support dismissal of Van Emon's MCPA claim.  In that case, Michigan plaintiffs sued Chrysler for violations of the MCPA for distributing lemon law booklets that left plaintiffs with the misunderstanding that Michigan lacks a lemon law by outlining other states' lemon laws while leaving out Michigan's law.  Chrysler argued that subsections 3(1)(n) and (cc) of MCPA § 445.903 refer to the sale of the vehicle only and that anything that happens after the sale is irrelevant.  <u>Id.</u> at 279.   The Court of Appeals found that since subsection 3(1)(cc) referred to the failure to reveal information material to the transaction, it would not involve disclosures made after the sale of the vehicle was complete.  <u>Id.</u>  The Court of Appeals explained that Chrysler's disclosure of information about some states' lemon laws while failing to disclose information about Michigan's lemon laws, which came to a buyer's attention only after the sale was completed, was not actionable under subsection 3(1)(cc).  The Court of Appeals ruled, however, that subsection 3(1)(n) could be understood to refer to acts that occur before and after the transaction has been completed.  State Farm argues that <u>Zine</u> was incorrectly decided in that it allowed claims to go forward under subsection 3(1)(n).  State Farm theorizes that the Michigan Legislature intended the MCPA to address only transactional abuses, not post-transactional conduct.  State Farm has cited no case law or other authority to support this claim.  State Farm's argument that the MCPA only

applies to alleged improprieties in the marketing, sale or advertising of the policy in question is not borne out by the language of the statute itself or by the case law interpreting it.

In fact, Van Emon seeks to rely on statutory provisions of the MCPA, which on its face, are not limited to the sale or marketing of the policy. Specifically, she cites to subsection 3(1)(n) which defines unfair, unconscionable, or deceptive methods to include, "causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction." Van Emon's Second Amended Complaint also alleges violations of subsection 3(1)(c) which prohibits, "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation or connection that he or she does not have." She also relies on subsection 3(1)(s) which prohibits, "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." Similarly, subsection 3(1)(x) prohibits, "[t]aking advantage of the consumer's inability reasonably to protect his or her interests by reason of disability, illiteracy, or inability to understand the language of an agreement presented by the other party to the transaction who knows or reasonably should know of the consumers inability."

In its prior order, this Court explained that Van Emon's MCPA claim was limited to MCPA claims which accrued prior to March 28, 2001. The reason for that time limit is that the legislature in Michigan amended the MCPA in 2000, effective March 28, 2001,

26

providing that the MCPA does not apply or create a private cause of action for violations of the UTPA. MCL § 445.904(3). As this Court explained in its prior opinion, the 2000 amendment to the MCPA has only prospective application, and thus does not bar claims accruing prior to its amendment on March 28, 2001. Based on this ruling, the Court did not dismiss Van Emon's MCPA claim, leaving open the possibility that she could prove violations accruing prior to the March 28, 2001 amendment date.[3]

Contrary to State Farm's arguments, plaintiff's claims are not limited to circumstances surrounding the sale or marketing of the policy. Plaintiff could prove violations of the MCPA claim if she could show acts of fraud and resulting UTPA violations that occurred before March 28, 2001. Plaintiff has cited to provisions of the MCPA which she alleges have been violated but she has not come forward with any evidence to support those claims. Plaintiff cannot rely on bald assertions to survive

---

[3]State Farm argues that the statute of limitations bars all claims accruing prior to July 1, 1999, which is six years prior to the filing of the lawsuit which took place on July 1, 2005. Plaintiff argues that the limitations period has not run because payments related to the underlying MCPA violation continue. The MCPA sets forth its own statute of limitations period. MCL § 445.911(7) provides:

> An action under this section shall not be brought more than 6 years after the occurrence of the method, act, or practice which is the subject of the action nor more than 1 year after the last payment in a transaction involving the method, act, or practice which is the subject of the action, whichever period of time ends at a later date.

Plaintiff's argument that payments related to the underlying practice continue fails as the March 28, 2001 amendment date controls. Since the court has already ruled that the 2000 amendment to the MCPA bars all claims accruing prior to March 28, 2001, plaintiff's MCPA claim is limited to alleged violations occurring between July 1, 1999 and March 28, 2001. Had this court not granted summary judgment dismissing the MCPA claim, the court would allow plaintiff the chance to prove that the tolling provision of MCL § 600.5851 applies.

summary judgment. Van Emon's limited proffered evidence does not support a reasonable finding that State Farm failed to act honestly and explain benefits, misrepresented material facts, improperly communicated with her or her agents, failed to timely affirm or deny coverage, or failed to explain the basis for the denial of coverage prior to March 28, 2001. Having already found no actionable fraud in this case, plaintiff's MCPA claim must fail as well.

<u>CONCLUSION</u>

For the reasons stated above, State Farm's motion for partial summary judgment (Document #201) is GRANTED in that plaintiff's claims of silent fraud (Count I), fraud/misrepresentation (Count II), negligence (Count IV), intentional infliction of emotional distress (Count V), and violations of the MCPA (Count VI) hereby are DISMISSED WITH PREJUDICE. State Farm did not seek summary judgment on Count II, breach of contract, so that claim remains viable.

SO ORDERED.

Dated: June 18, 2008

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 18, 2008, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk